# Applicability of the Federal Advisory Committee Act to Presidential Task Force on Market Mechanisms

The Presidential Task Force on Market Mechanisms is exempt from the requirements of the Federal Advisory Committee Act.

January 5, 1988

MEMORANDUM OPINION FOR THE
SENIOR ASSOCIATE COUNSEL TO THE PRESIDENT

## Introduction and Summary

This memorandum updates our submission to you of October 29, 1987, in which we concluded that a proposed commission charged with studying volatility in securities markets would be exempt from the requirements of the Federal Advisory Committee Act ("FACA"). You have requested that we update our memorandum in light of the specific provisions of Executive Order No. 12614, issued November 5, 1987, which set forth the purpose and functions of the Presidential Task Force on Market Mechanisms (the "Task Force"). Specifically, you have asked whether the Task Force would be exempt from the requirements imposed by FACA, in light of 5 U.S.C. app. § 4(b), which provides that FACA does not apply to advisory committees "established or utilized by" the Federal Reserve System.

Our analysis is based on the following description of the Task Force contained in Executive Order No. 12614:

(1) The Task Force "shall be composed of five persons appointed by the President," one of whom has been designated as chairman;

(2) the Task Force "shall review relevant analyses of the current and long-term financial condition of the Nation's securities markets, identify problems that may threaten the short-term liquidity or long-term solvency of such markets, and analyze potential solutions to such problems that will both assure the continued smooth functioning of free, fair, and competitive securities markets and maintain investor confidence in such markets;"

(3) the Task Force "shall provide appropriate recommendations to the President, to the Secretary of the Treasury, and to the Chairman of the Board of Governors of the Federal Reserve System;" and

(4) "to the extent permitted by law and subject to the availability of funds therefor, the Executive Office of the President and

11

the Department of the Treasury shall provide the Task Force with such administrative services, funds, facilities, staff, and other support service as may be necessary for the performance of its functions."

Given the composition, purpose, and functions of the Task Force as described in the Executive Order, and based upon our understanding that its recommendations to the Federal Reserve System would deal with matters within the scope of the Federal Reserve System's responsibilities, we conclude that the Task Force is exempt from FACA.

## Analysis

We begin, of course, with an examination of the language of the statute itself.[1] FACA generally applies "to each advisory committee," except to the extent that any Act of Congress specifies to the contrary. 5 U.S.C. app. § 4(a). This general rule is, however, subject to an express limitation in FACA itself. Section 4(b) of FACA, 5 U.S.C. app. § 4(b), states that "[n]othing in this Act shall be construed to apply to any advisory committee established or utilized by (1) the Central Intelligence Agency; or (2) the Federal Reserve System." It follows that an "advisory committee" that is either "established or utilized by" the Federal Reserve System (or the Central Intelligence Agency) is exempt from FACA's requirements.

Since the Task Force is an "advisory committee"[2] established by the President, the key question is whether it is "utilized by" the Federal Reserve System. Inasmuch as the Task Force will report to the chairman of the Federal Reserve Board on matters within the Federal Reserve System's responsibilities (margin requirements, broker loans, and the stability of the banking system), the Task Force is "utilized by" the Federal Reserve System, within the plain meaning of that term.[3] Thus, the Task Force appears to be exempt from FACA's requirements. Moreover, the fact that the Task Force also reports to the Secretary of the Treasury and the President in no way alters this conclusion. FACA does not require that, in order to be exempt, an advisory committee must be utilized *solely* by the Federal Reserve System (or the Central Intelligence Agency). The words of the

---

[1] *See, e g., Touche Ross & Co v. Redington*, 442 U S. 560, 568 (1979); *Greyhound Corp v Mt. Hood Stages, Inc* , 437 U.S 322, 330 (1978).

[2] FACA states, in pertinent part, that an "advisory committee" is "any committee, board, commission, council, . . . or any . . . subgroup thereof . . . which is (A) established by statute or reorganization plan, or (B) established or utilized by the President, or (C) established or utilized by one or more agencies, in the interest of obtaining advice or recommendations for the President or one or more agencies or officers of the Federal Government." 5 U.S.C. app. § 3(2). The Task Force, which is established by the President and charged with making recommendations to the Chairman of the Federal Reserve System (as well as to the Secretary of the Treasury and the President), clearly appears to qualify as an "advisory committee" within the meaning of FACA.

[3] Regulations promulgated pursuant to FACA state that an advisory committee is "utilized" by a federal agency if it is used "as a preferred source from which to obtain advice or recommendations on a specific issue or policy within the scope of [federal officials'] responsibilities." 41 C F.R. § 101–6.1003 (1987). The Task Force clearly meets this description with respect to the Federal Reserve System.

12

statutory exemption therefore cover those advisory committees, such as the Task Force, that are utilized by the Federal Reserve System *and* other governmental entities.[4]

The limited legislative history bearing upon section 4(b) in no way undermines the conclusion, drawn from that provision's plain language, that section 4(b) exempts the Task Force from FACA's requirements. That legislative history emphasized Congress' concern with protecting the confidentiality of the deliberations carried out by groups advising the Federal Reserve Board, given the possible negative implications for our financial system should those deliberations become public knowledge.[5] This policy concern applies fully to the deliberations of the Task Force. The impact of securities market volatility on the broker-age and banking systems — an issue that the Task Force is charged with studying — has significant implications for financial stability.[6]

## Conclusion

For the foregoing reasons, we conclude that, provided the Task Force is utilized in the manner described above, it is exempt from the requirements of FACA.

CHARLES J. COOPER
*Assistant Attorney General*
*Office of Legal Counsel*

---

[4] Nor are general requirements of FACA circumvented by giving full scope to the statutory exception contained in section 4(b) Because advisory committees must address issues relevant to the Federal Reserve System or the Central Intelligence Agency to come with the ambit of this exception, only a relatively few committees will qualify for the exception

[5] The clause that became section 4(b) was originally introduced as an amendment by Senator Javits, during the floor debate that preceded passage of the Senate version of FACA. That preliminary version of section 4(b) stated that "the provisions of this act [FACA] shall not apply to any advisory committee established for or utilized by the Federal Reserve System." 118 Cong. Rec. 30,273 (1972). (The final version of section 4(b), which also made reference to the Central Intelligence Agency, was adopted by the joint House-Senate Conference Committee on FACA.) Senator Javits introduced the amendment in order to shield the "Federal Reserve Advisory Council" ("FAC") from FACA's strictures According to Senator Javits, "everyone knows the speculation, financial, and otherwise, which goes on around the world respecting the Federal Reserve System's operations. In order to have an advisory council at all, which would be very useful to them, they simply have to ask to be exempted from the provisions of this bill." *Id* Senator Javits cited a letter from Arthur F. Burns, Chairman of the Federal Reserve Board, which stressed that the draft FACA provisions regarding public disclosure of FAC proceedings could "prove troublesome. Since the FAC's discussions cover a number of subjects such as monetary policy, the international payments system, and liquidity conditions in the banking system, premature publication of views candidly expressed at FAC meetings could prove harmful Discussion at these meetings is now full and frank and would be seriously inhibited if the meetings were open to the public . . or even if minutes of the meetings were published . . . ." *Id.* Consistent with the concerns identified by Senator Javits and Chairman Burns, Senator Metcalf added that "there are important considerations in [FACA] that are clearly not involved and should not be a part of the considerations as to the Federal Reserve Board. . . . [M]any of the propositions that are analyzed by the [Federal Reserve] [B]oard need to have secrecy of consideration and secrecy as to their activities." *Id*

[6] Finally, there is no suggestion in the legislative history that the rationale underlying the FACA exemption would be undermined if a group advising the Federal Reserve Board also were directed to advise another federal agency, such as the Department of the Treasury.

13
